IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:19-CR-00155-01 |
| v. | (Judge Brann) |
| DONALD BARLOW, | |
| Defendant. | |

**MEMORANDUM OPINION**

**NOVEMBER 3, 2020**

Currently pending before the Court is Donald Barlow's motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Barlow contends that he is entitled to release to home confinement due to the COVID-19 pandemic and his particular susceptibility to the virus.[2] The Government opposes the motion.[3]

**I.   BACKGROUND**

In 2019, Barlow was indicted for distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), providing contraband in prison, in violation of 18 U.S.C. § 1791(a)(1), and possessing contraband in prison, in violation of 18 U.S.C. § 1791(a)(1).[4] Barlow thereafter pled guilty, pursuant to a written plea agreement, to

---

[1] Doc. 71.
[2] *Id.*
[3] Doc. 76.
[4] Doc. 1.

providing contraband in prison.[5] The guilty plea was accepted[6] and a Presentence Report ("PSR") was prepared.

The PSR provided details of the offense of conviction: in August of 2014, Barlow visited his son at the Low Security Correctional Institution in Allenwood, Pennsylvania.[7] During that visit, prison officials noticed Barlow hand something to his son and, therefore, placed the son in a dry cell.[8] The son eventually admitted that he had received oxycodone pills from Barlow, and prison officials thereafter recovered nine and one-half oxycodone pills from him.[9] When questioned by the Federal Bureau of Investigation, Barlow acknowledged that he had twice smuggled oxycodone pills to his son in federal prison.[10]

The PSR noted that Barlow had no criminal history, had previously served in the military, and had a history of steady employment—although Barlow was, at the time of sentencing, receiving disability payments due to physical impairments.[11] These injuries and ailments took a myriad of forms during Barlow's life, including a serious hand injury in 1993, a heart attack, more than a dozen surgeries on Barlow's knee, shoulder, and elbow, degenerative spinal changes, hyperlipidemia, hyperpotassemia, and, most importantly, congestive heart failure and the installation of a pacemaker.[12]

---

[5] Doc. 21.
[6] Doc. 27.
[7] Doc. 40 at 4.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 4-5.
[11] *Id.* at 7, 10-12.
[12] *Id.* at 8-10.

At sentencing, this Court noted that the crime of conviction was serious, but that Barlow's actions were not part of a larger conspiracy and were instead motivated by Barlow's understandable desire to ease his son's physical pain. The Court also found it significant that Barlow had, until that point, lived an exemplary life, having served in the military and never having been convicted of a crime. That history, combined with Barlow's age and health issues, convinced the Court that Barlow posed a low risk of recidivism and was not a danger to society. This, in turn, led the Court to vary significantly below the Sentencing Guidelines range of 46 to 57 months' imprisonment and impose a term of imprisonment of one year and one day.[13]

Barlow is currently incarcerated at the Low Security Federal Correctional Institute Butner, located in Butner, North Carolina ("LSCI Butner"), and has a projected release date of March 28, 2021—meaning that, inclusive of potential good-conduct credit, Barlow has served just under half of his incarcerative sentence. Barlow has now filed a motion for compassionate release.[14] In his motion, Barlow asserts that he suffers from congestive heart failure, which places him at a higher risk of serious illness or death should he contract COVID-19.[15] The Government argues that Barlow's health issues are insufficient to demonstrate that extraordinary and compelling reasons exist to grant the motion and, in any event, the relevant 18 U.S.C. § 3553(a) sentencing

---

[13]  *See* Doc. 54.
[14]  Doc. 71.
[15]  *Id.*

factors militate against releasing him from custody at this time.[16] Barlow's motion is ripe for consideration and, for the following reasons, will be granted.

## II. DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."[17] Congress has provided courts with the authority to modify sentences through its enactment of 18 U.S.C. § 3582(c)(1)(A). That statute permits courts to reduce an inmate's sentence if the inmate has exhausted his administrative remedies[18] and if, as relevant here, "extraordinary and compelling reasons warrant such a reduction."[19] Courts should also consider the relevant 18 U.S.C. § 3553(a) sentencing factors[20] and whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[21]

### A. Extraordinary and Compelling Reasons

Congress has not defined the term "extraordinary and compelling." Nevertheless, the Sentencing Guidelines define the term to include a terminal illness, or any non-terminal illness "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is

---

[16] Doc. 76.
[17] *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).
[18] The Government concedes that Barlow has exhausted his administrative remedies, as he filed a request for release to home confinement with the BOP more than thirty days ago. (Doc. 76 at 23-24; *see United States v. Harris*, __ F.3d __, __, No. 20-1723, 2020 WL 5198870, at *1 (3d Cir. July 20, 2020) (concluding that a movant may file a motion for compassionate release with the district court "thirty days after the warden receives his request" for home confinement, even if the movant did not further appeal the denial of any such request).
[19] 18 U.S.C. § 3582(c)(1)(A)(i).
[20] *Id.*
[21] U.S. Sentencing Guidelines Manual § 1B1.13(2).

not expected to recover."[22] This definition is not, however, authoritative, as "[t]he Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated."[23] Thus, while "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, . . . it does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."[24] "The burden rests with the defendant to show that a reduction in sentence is proper."[25]

Contrary to the Government's assertion, the Court concludes that Barlow has sustained his burden of establishing that extraordinary and compelling reasons weigh in favor of granting compassionate release. As an initial matter, the Court notes that the existence of COVID-19 cannot alone justify compassionate release. As the United States Court of Appeals for the Third Circuit has explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.[26]

---

[22] USSG § 1B1.13, cmt. n.1(A).
[23] *United States v. Rodriguez*, __ F.Supp.3d __, __, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020).
[24] *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *3 (M.D. Pa. Aug. 5, 2020) (brackets and internal quotation marks omitted).
[25] *United States v. Rengifo*, No. CV 1:13-CR-00131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020).
[26] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Thus, to demonstrate extraordinary and compelling reasons for compassionate release, movants must show that they suffer from one or more ailments that render them particularly susceptible to serious illness or death should they contract COVID-19.

Barlow's records confirm that he is obese[27] and suffers from, as relevant here, type 2 diabetes mellitus and congestive heart failure.[28] The Centers for Disease Control and Prevention ("CDC") lists all three of these conditions as factors that increase an individual's risk for serious complications from COVID-19;[29] these risks have been confirmed by numerous studies and analyses.[30] The CDC notes that individuals with diabetes or a BMI of between 30 and 39.9 are three times more susceptible to serious illness or death from COVID-19 as are individuals without underlying conditions, while individuals with three or more qualifying underlying medical conditions are five times more susceptible.[31] Thus, it is clear that Barlow is at a high risk of serious illness or

---

[27] The PSR notes that Barlow is 6 feet 2 inches tall and weighs 244 pounds. (Doc. 40 at 8). According to the United States Department of Health & Human Services, National Institute of Health's Body Mass Index ("BMI") calculator, Barlow's BMI is 31.3, which is classified as obese. U.S. Dep't of Health & human Servs., *Calculate Your Body Mass Index*, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Sept. 18, 2020).

[28] Doc. 76-2 at 77, 96, 104.

[29] *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 18, 2020).

[30] *See* Centers for Disease Control and Prevention, *Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited Sept. 18, 2020).

[31] Centers for Disease Control and Prevention, *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-underlying-medical-conditions.html (last visited Sept. 18, 2020).

death from COVID-19, and has therefore "shown 'extraordinary and compelling reasons' that would permit the court to grant compassionate release."[32]

Furthermore, the current relatively low prevalence of COVID-19 at LSCI Butner does not weigh against compassionate release. Numerous courts "have recognized that the nature of the prison environment itself enhances the likelihood that prisoners will catch this highly contagious virus."[33] Additionally, there is currently one inmate and one staff member who are infected with COVID-19 at LSCI Butner, while an astounding sixteen inmates and one staff member have died from COVID-19, and 637 inmates and 17 staff members have recovered from the virus at that facility.[34] This demonstrates that the introduction and possible spread of COVID-19 in that facility is more than a mere theoretical possibility.

Furthermore, while incarcerated Barlow simply cannot effectively social distance. While COVID-19 may well be present in the community in which Barlow will live, if released from custody he will be subject to home confinement which, by necessity, means that Barlow will social distance and self-isolate. Whether through luck or providence, Barlow managed to escape infection during the earlier COVID-19 outbreak at LSCI Butner. He may not be so lucky a second time.

---

[32] *United States v. Horton*, No. 1:13-CR-16, 2020 WL 4473405, at *4 (M.D. Pa. Aug. 4, 2020).
[33] *United States v. Perkins*, No. 14-CR-104-LM-1, 2020 WL 4783558, at *5 (D.N.H. Aug. 18, 2020).
[34] *See COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Sept. 18, 2020).

**B.     Relevant Sentencing Factors**

Turning next to the relevant § 3553(a) factors, the Court concludes that said factors do not outweigh the extraordinary and compelling reasons to grant compassionate release. The relevant sentencing factors to consider under § 3553(a) include, *inter alia*, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[35]

As to the nature and circumstances of the offense and the need for the sentence to reflect the severity of the crime, the Court notes that the offense was fairly serious. Barlow introduced a controlled substance to a federal prison, which jeopardized the safety and orderly operation of the prison. Nevertheless, the seriousness of the offense is mitigated to some extent by the fact that Barlow was not part of a conspiracy, but merely sought to ease his son's pain.

With respect to the history and characteristics of the defendant, Barlow had a good upbringing, served with honor in the United States military, maintained gainful and steady employment throughout his life, and led a law-abiding life with no criminal convictions.[36] He is 63 years of age, is married with three children and, as detailed

---

[35]   18 U.S.C. § 3553(a).
[36]   Doc. 40 at 7-8, 10-12.

above, suffers from a number of serious medical issues.[37] This indicates that Barlow is an individual who respects the law and is not likely to reoffend.

Critically, Barlow is now 63 years of age and suffers from a number of medical issues, including congestive heart failure. Not only do Barlow's medical conditions make him an unlikely candidate to reoffend, but a study conducted by the United States Sentencing Commission reveals that offenders above the age of 60 with a base offense level of 26 for their crime of conviction have only a 2.7 percent recidivism rate.[38] This emphasizes the very low risk that Barlow poses to the public should he be released from custody, and indicates no need to afford adequate deterrence through continued detention.

Turning to the need to provide just punishment for the offense,[39] as noted previously, Barlow has served just under half of his 366-day sentence. Under ordinary circumstances, the Court would conclude that release from custody at this time would not serve this sentencing goal. However, these are not ordinary circumstances. As detailed above, Barlow's health conditions place him at a significant risk of death or serious illness should he contract COVID-19; such a diagnosis would constitute—as a practical matter—a death sentence. As other courts have noted in similar circumstances,

---

[37] *Id.* at 2, 8.
[38] *The Effects of Aging on Recidivism Among Federal Offenders*, p. 17, fig. 9 (United States Sentencing Commission Study, Dec. 2017).
[39] 18 U.S.C. § 3553(a).

"[a] death sentence is neither a just sentence nor one that would promote respect for the law."[40]

With respect to the need to provide medical care in the most effective manner,[41] Barlow requires significant medical treatment and it appears from the record that he is receiving more than adequate care. However, there is no evidence that Barlow will receive inferior care upon his release from custody. To the contrary, Barlow should be able to obtain comparable or better treatment at a private facility.[42] This consideration is therefore, at most, neutral.

Finally, the Court rejects the Government's contention that continued incarceration is necessary to avoid unwarranted sentencing disparities. First, the Court already varied far below the recommended Sentencing Guidelines range in recognition of the fact that Barlow is, in many ways, an atypical offender who is not similarly situated to most individuals who are convicted of providing contraband in prison. Second, Barlow's medical condition renders his situation far different than other defendants. As detailed above, Barlow's medical conditions, combined with a once-in-a-generation pandemic, place him at a significant risk of death or serious illness should he remain in prison. This is a situation that the vast majority of prisoners do not face. Accordingly, after weighing the relevant § 3553(a) factors, the Court concludes that

---

[40] *United States v. Perkins*, No. 14-CR-104-LM-1, 2020 WL 4783558, at *9 (D.N.H. Aug. 18, 2020).
[41] 18 U.S.C. § 3553(a)(2)(D).
[42] *Cf. Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (noting that, in the prisoner context, "negligent treatment or even medical malpractice" does not violate the Constitution).

said factors do not outweigh Barlow's extraordinary and compelling reasons for compassionate release.

### C.   Dangerousness

Finally, the Court must consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[43] As discussed above, the Court believes—and the Government does not dispute—that Barlow does not present a danger to his community. This consideration therefore does not weigh against granting compassionate release.

### D.   Weighing the Relevant Considerations

After weighing the relevant considerations, the Court concludes that the § 3553(a) factors, along with any minimal danger that Barlow presents to the public, do not outweigh Barlow's extraordinary and compelling reasons for compassionate release. Ultimately, the Court has grave concerns for Barlow's health and safety should he remain incarcerated for the duration of this pandemic, and believes that compassionate release is appropriate.

Consequently, the Court will grant Barlow's motion for compassionate release. However, to minimize Barlow's potential exposure to COVID-19 and to best promote respect for the law and provide just punishment for the offense of conviction, the Court will convert the remainder of Barlow's term of incarceration into a term of supervised release and direct home confinement for the remainder of that term.

---

[43]   USSG § 1B1.13(2).

## III.    CONCLUSION

For the foregoing reasons, Barlow's motion for compassionate release will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge
